ESTATE OF CHARLES FEARON, DECEASED, MARGARET H. FEARON, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19560. Promulgated February 20, 1951.

*Stephen T. Dean, Esq.*, and *Donald McDonald, Esq.*, for the petitioner.

*W. Morgan Hunter, Esq.*, for the respondent.

386

392

OPINION.

ARUNDELL, *Judge:* The sole issue is whether the distribution in 1942 by the Louisville Property Company to petitioner and other stockholders was an ordinary dividend taxable at ordinary income tax rates, or an amount distributed in complete liquidation taxable at capital gains rates pursuant to section 115 (c) of the Internal Revenue Code.[1]

Petitioner, an individual stockholder of Property Company, received $7,380, or $15 per share, upon this distribution, which he reported as an amount received in complete liquidation. Respondent contended it was an ordinary dividend and determined a deficiency accordingly.

In *T. T. Word Supply Co.*, 41 B. T. A. 965, 980, we held that:

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTION IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112.

\* \* \*. The liquidation of a corporation is the process of winding up its affairs by realizing upon its assets, paying its debts, and appropriating the amount of its profit and loss. It differs from normal operation for current profit in that it ordinarily results in the winding up of the corporation's affairs, and there must be a manifest intention to liquidate, a continuing purpose to terminate its affairs and dissolve the corporation, and its activities must be directed and confined thereto. A mere declaration is not enough, and the question whether a corporation is in liquidation is one of fact. [See also *Fred T. Wood*, 27 B. T. A. 162; *Rollestone Corp.*, 38 B. T. A. 1093.]

The disagreement between the parties is whether there has been a continuing purpose to liquidate and a confinement of the activities of the assignees of Property Company to that end.

The liquidation of Property Company was not self-imposed. It had its origin in an adversary proceeding instituted by minority stockholders to oust the directors, annul conveyance of certain property, and to wind up the affairs of Property Company. An appeal was taken to the Court of Appeals of Kentucky which in the year 1919 ordered that Company's property be sold, its affairs wound up and to that end a receiver be appointed, to be under the control of the court. All property was assigned to a trustee,[2] the U. S. Trust Company of Louisville, Kentucky, which immediately set out to liquidate the company and by the end of 1925 had disposed of nearly all property assigned to it. The only property not disposed of at this time consisted of mineral and coal rights in about 17,000 acres in Hopkins, McLean, and Muhlenburg Counties in western Kentucky.

It is clear, and respondent does not deny, that at this time Property Company was in process of complete liquidation. Disagreement arises mainly from the manner in which Williams, the successor assignee, disposed of the remaining property, particularly the land in Bell County, Kentucky, which the Trust Company had repossessed in 1930 upon the default of the Log Mountain Mining Company on its mortgage bonds given as part of the consideration for the purchase of those lands in 1924.

The Bell County holdings, consisting of 28,551.9 acres, were disposed of by Williams in the following manner: by the end of 1940, he had sold 10,309 acres of surface land and by the end of 1948 he had sold an additional 3,200 acres of surface rights. In 1942, he disposed of 15,510 acres of oil and gas rights, and by the end of 1948 he had disposed of an additional 2,320.9 acres of oil and gas rights; nearly all of the standing timber; 15.57 per cent of the estimated coal, and all the mining equipment acquired by foreclosure in 1930.

According to respondent, these dispositions related more to the conduct of regular business operations than to the liquidation of a corporation and, therefore, he contends that the distribution of profits earned from these operations constituted an ordinary dividend in-

---

[2] A subsequent Kentucky decision approved the use of a trustee instead of a receiver.

stead of a distribution in liquidation. We can conceive of circumstances in which Williams' activities could be viewed as regular business operations but in the circumstances of this case we do not believe that they should be so regarded.

Williams has testified that he would have preferred to sell the Bell County lands outright rather than sell or lease merely the mineral rights, and had repeatedly attempted to do so but could never obtain an offer since there was practically no market. He has negotiated with a number of parties, including the American Association, a coal company operating on adjacent lands, but has been unable to interest them in the property. He expressed the view that such a purchase is too large a project for people who are in the coal business in that section of the country.

Williams' disposition of the coal and mineral rights in western Kentucky was also in keeping with a continuing purpose to liquidate. The Trust Company had not sold these lands and Williams testified that they were not readily salable. He was able to sell a sizable portion of the mineral rights and the purchaser was given an option to purchase similar rights in the unsold sections.

Williams has not added to or in any way expanded the non-liquid assets of Property Company. From 1935 to 1942, he has steadily increased the proportion of liquid assets to total assets. He has never planted trees to replace the standing timber cut, nor has he purchased any mining equipment or property [3] or any land or buildings.

We have no reason to doubt the testimony of Williams, who was in the best position to know the facts and who was not a stockholder or associated with the corporation in any way. The Whitley Circuit Court has maintained continuous supervision over the activities of Williams who, as trustee, was holding and operating the property for the benefit of creditors as well as shareholders. Annual reports of receipts and disbursements to creditors and stockholders were made under express authorization of the court, and there is no reason to believe that Williams has been derelict in performing his duties or that the Whitley Circuit Court has been lax in its supervision of the liquidation.

Nor is the length of time consumed fatal to a determination that the corporation was in the process of complete liquidation. The Commissioner may well expect the liquidation to be conducted in good faith but not that it be conducted in haste. That the liquidator's first responsibility is to the creditors and shareholders, was recognized in *R. D. Merrill Co.*, 4 T. C. 955, wherein we stated at page 969:

We should not, without good reason, overrule the judgment of the liquidators of such an enterprise. The length of time which may reasonably be required to

---

[3] With the exception of a necessary $800 item.

liquidate the assets of the corporation as well as the determination of the manner of liquidation are matters soundly left to the discretion of the liquidators, who are charged with a duty of effecting a liquidation in such time and in such manner as will inure to the best interests of the corporation's stockholders.

There was adequate reason for the consumption of a lengthy period of time, and we do not believe that by the end of 1942 it was excessive. The assets were not readily marketable. The large holdings in Bell County at one time disposed of had been reacquired by foreclosure. Moreover, there were outstanding two claims, one by the Louisville & Nashville Railroad Company and another by the heirs and assignees of Clayton B. Blakey, which had not been settled before the end of 1942 and in fact were not settled until 1947. When considered with these factors in the background, the length of time consumed as of the end of 1942 does not appear unreasonable. It follows that the sum of $7,380 received by the decedent in 1942 was taxable as a distribution in complete liquidation within the meaning of section 115 (c) of the Internal Revenue Code.

*Decision will be entered under Rule 50.*